## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| **TERRICA N. EVANS,** | ) |
| | ) |
|     **PLAINTIFF.** | ) |
| | ) |
| **VS.** | )   **CASE NO:**_____ |
| | ) |
| **MONEY NETWORK FINANCIAL, LLC,** | ) |
| **WALMART & SEDGWICK,** | ) |
| | ) |
|     **DEFENDANTS.** | ) |

## COMPLAINT

Comes now the Plaintiff, through counsel, and makes the following complaint:

### INTRODUCTION

1. Congress enacted the Employee Disability Income Security Act ("ERISA") to provide basic protections for employees with respect to employee benefit plans offered by their employers. See 29 U.S.C. § 1001(a). Congress explicitly found that the protections in ERISA were necessary to strengthen principles of fiduciary responsibility to participants.

2. The Defendants Walmart and its agents Sedgwick & Money Network in this case (collectively and jointly and severally referred to as "Walmart Money Network") have engaged in a scheme to undermine ERISA by refusing to invest in appropriate security measures to avoid identity theft and cybersecurity threats while

at the same touting its money cards as safe and secure and charge fees for use of the same. Plaintiff brings this class action complaint, on behalf of herself and all others similarly situated, to end Walmart Money Network's illegal and abusive practices.

3. Walmart Money Network encourages employees throughout the country to use the Money Network Card to receive salary, disability and other pay due from Walmart.

4. Walmart and Sedgwick place benefits from an employee's disability policies and other compensation on the Money Network Card (also hereinafter referred to as "Card"). See 29 U.S.C. § 1002(1) (defining "employee disability/compensation benefit plan" and "disability/compensation plan" under ERISA to mean any plan, fund, or program established or maintained by an employer that by its express terms or as a result of surrounding circumstances "provides disability income to employees.")

5. Employees are eligible for disability benefits, compensation, etc. as defined by the Act. see 29 U.S.C. 1002(1) (defining "employee welfare benefit plan" and "welfare plan" under ERISA to mean any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is

maintained for the purpose of providing for its participants or their beneficiaries disability benefits in the event of injury.

   6. According to the U.S. Department of Labor, the Employee Disability Income Security Act (ERISA) protects an employee's plan's assets by requiring that those persons or entities who exercise discretionary control or authority over plan management or plan assets, have discretionary authority or responsibility for the administration of a plan, or provide investment advice to a plan for compensation or have any authority or responsibility to do so are subject to fiduciary responsibilities.

   7.   Plan fiduciaries include, for example, plan trustees, plan administrators, and members of a plan's investment committee. Hence, both Walmart and Sedgwick, as administrators and Money Network, as their distribution agent, are plan fiduciaries.

   8. The Labor Department goes on to state that "the primary responsibility of fiduciaries is to run the plan solely in the interest of participants and beneficiaries and for the exclusive purpose of providing benefits and paying plan expenses. Fiduciaries must act prudently. .  .Fiduciaries who do not follow these principles of conduct may be personally liable to

restore any losses to the plan, or to restore any profits made through improper use of plan assets. Courts may take whatever action is appropriate against fiduciaries who breach their duties under ERISA including their removal."

9. In this case, the Walmart Money Network operated and exploited the Plan to maximize its own profit and shift the burden of and otherwise pass the costs and damages associated with employee losses due to cybersecurity, fraud and theft off to Plan participants.

10. This lawsuit seeks:

(A) a declaration that the defendants have failed to impose reasonable security measures to prevent theft of disability and other compensation benefits off of employee's Money Network Cards and the benefits placed thereon and to mitigate and minimize damage in the case of theft;

(B) a declaration that the defendant Walmart's plan fails to have a reasonable process for investigating and replacing stolen or compromised funds in the case of theft or cybersecurity breaches;

(C) a declaration that administrative and other fees associated with security and administration of the Card and charged to employees have not been reasonably used to prevent

theft and cybersecurity and are thereby due to be refunded;

(D)   refund to Plaintiff and the Class of all fees paid for maintenance of said card and convenience and establish an ERISA compliant procedure for making claims for cybersecurity breaches, fraud and theft against employee plan participants;

(E)   an order retroactively reforming the Plan to comply with ERISA's fiduciary responsibilities in regard to cybersecurity and theft in order to make the class whole and to prevent Defendants' unjust enrichment;

(F)   payment to Plaintiff and the Class of all amounts due under the Plan as if they had complied with ERISA and imposed appropriate measure to prevent theft of compensation benefits and provided a reasonably safe plan compliant with The Employee Disability Income Security Act (ERISA);

(G)   an injunction barring Defendants from continuing to issue cards and benefit payments to cards without adequate theft, fraud and cybersecurity protections and an ERISA compliant and reasonable procedure for making claims for theft, cybersecurity breaches and fraud.

## JURISDICTION AND VENUE

11.   This Court has subject matter jurisdiction over the ERISA claims under 29 U.S.C. § 1132(e)(1). This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)

as the amount in controversy exceeds the jurisdictional minimum.

12. This Court is a proper venue under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims asserted in this complaint occurred in this judicial district; to wit, the benefits owed under ERISA were due and owing to Plaintiffs in this judicial district, which is where the Plaintiffs were employed.

## PARTIES

13. Plaintiff Terrica N. Evans was, during the relevant period, an Employee for Walmart and used the Walmart Money Network. She resides in Birmingham, Alabama.

14. Defendant Money Network is a distribution agent and service provider as defined by ERISA and it is located at 2900 Westside Parkway, Alpharetta, GA 30004. At all times relevant hereto Money Network acted as the agent of Walmart for purposes of distribution of payroll and disability benefits, therefore the acts of Money Network constitute the acts of Walmart. Money Network provided a plan service to Sedgwick and Walmart by permitting them to place Plan, disability and compensation benefits on its electronic debit Money Network Card ("also hereinafter referred to as "Card").

15. Defendant Walmart was the employer and plan provider/sponsor as defined by ERISA and it is located at 702 SW

8th Street, Bentonville, AK 72712. Walmart was Money Network's principal for purposes of distribution of compensation and disability benefits for the Plan.

16. Defendant Compensation and Long Term Disability Plan ("Plan") is an employee benefit plan as defined in 29 U.S.C. §1002(3) that is sponsored and administrated by Defendant Walmart.

17. Defendant Sedgwick, at all times relevant hereto was the agent of Walmart and it administered the Plan as its agent, on its behalf and as defined by ERISA. It is located at 8125 Sedgwick Way, Memphis, TN 38125. Sedgwick caused disability benefit and compensation funds to be placed onto the Walmart Money Network Card and on behalf of Walmart and the Plan.

18. At all relevant times, Walmart, Sedgwick and Money Network were engaged in selling its products in the United States, including in the state of Alabama.

## FACTS

19. The plaintiff was employed by Walmart in September 2018 and used a Walmart Money Network Card to have her Walmart salary and benefit deposited onto.

20. The plaintiff suffered a debilitating auto accident in 2018 unrelated to her job at Walmart and was placed in a coma and ultimately lost her ability to walk.

21. Beginning in September 2018 and while she was in a coma and recovering from the coma, her estranged mother, Leona Evans, with the help of Walmart, Sedgwick and Money Network, but without any authority or authorization, gained control of the plaintiff's financial affairs, including her Walmart Money Network Card and identification information, passwords, etc.

22. Over $1,000.00 in salary and disability benefits that were placed on the Money Network Card by Walmart were stolen from the plaintiff while she was in a coma and recovering shortly thereafter and after Walmart, Sedgwick and Money Network had been placed on notice that the plaintiff was in a coma and unable to manage her own affairs and that she was a victim of fraud.

23. Since this time, neither Walmart, Sedgwick nor Money Network, after notice of said theft, fraud and cybersecurity breaches, has taken the plaintiff's claims of theft and cybersecurity breaches seriously nor provided her with a reasonable, ERISA compliant process for making a claim for reimbursement of the stolen disability and compensation benefits.

24. At the same time, and upon information and belief, Money Network has charged administrative fees for convenience and use of said card per its own public disclosures while it has

not provided a reasonably secure mechanism for detecting and responding to cybertheft and fraud against Walmart Money Network card users.

25. These fees per its public disclosures include, but are not limited to, a fee for monthly paper statements, withdrawal fees, shipping fees, cash deposit and reload fees, etc.

26. Walmart employs thousands of Employees many of whom exclusively use the Walmart Money Network card to receive compensation and other benefits.

27. The terms for each member of the Class and Walmart Money Network are the same in all material respects and are representative of the terms between Walmart Money Network and each member of the Class.

**THE DISABILITY & COMPENSATION BENEFITS PLAN IS AN ERISA PLAN**

28. The Plan is designed to provide benefits to employees whose relationship with Walmart Money Network ends for any reason, including disability.

29. The Plan presumably provides benefits to Employees based on age, years of service.

30. In the event of a former Employee's serious injury and temporary long term work separation, his/her disability & compensation benefits are due the Employee

31. At all times relevant, Walmart promised to pay

disability & compensation benefits to its Employees.

32. By its terms, the Plan is an employee benefit plan as defined by ERISA. See 29 U.S.C. § 1002(2)(A) (defining "employee disability/compensation benefit plan" and "disability/compensation plan" under ERISA to mean any plan, fund, or program established or maintained by an employer that by its express terms or as a result of surrounding circumstances "provides disability income to employees").

33. Walmart, Sedgwick and Money Network have created and/or administered the Plan in a manner that permits them to avoid paying and otherwise pass off costs associated with employee theft, fraud and cybersecurity risks to participants in direct contravention of ERISA's employee protections.

34. Had Walmart, Sedgwick and Money Network complied with ERISA, Plaintiff would have been provided reasonable cybersecurity measures which would have prevented the theft of more than $1,000.00 in disability and other compensation benefits and would have provided a reasonable, ERISA compliant mechanism to investigate said theft and make a claim for said loss.

35. Upon information and belief, Walmart, Sedgwick and Money Network routinely and systemically ignore fraud, theft and cybersecurity risks associated with employee compensation and

disability benefits and otherwise fail to reasonably investigate claims related to the same.

## CLASS ALLEGATIONS

36. Plaintiff brings this action as an individual case and as a class action pursuant to Rule 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure. The Class is defined as all persons who used the Walmart Money Network Card during the Class Period, as further defined and limited below (the "Class") and experienced an alleged loss on the Card due to theft, cybersecurity risks and/or fraud.

37. The "Class Period" is the from 9/7/2018 to present, after consideration of any tolling and accrual issues and ending on the date of entry of judgment.

38. Subject to additional information obtained through further investigation and discovery, the Class definition may be expanded or narrowed by amendment or amended complaint.

39. Numerosity. The Class is so numerous that joinder of all members in this action is impracticable. Plaintiffs are informed and believe, and on that basis allege, that the proposed Class contains hundreds, if not thousands, of similarly situated current and former Walmart Employees scattered throughout at least fifty states. Upon information and belief, these Employees were parties to substantially similar, if not

identical, Card terms and were also subject to the same common scheme depriving them of employee benefits, including, but not limited to disability & compensation benefits and unreasonable costs associated with administering said Card.

40. Existence and Predominance of Common Questions of Law and Fact. Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting only individual Class members. These common legal and factual questions, each of which yield a common answer, include, but are not limited to, the following:

(A) Whether defendants instituted reasonable measures to prevent theft, fraud and cybersecurity breaches of Employee compensation and benefits;

(B) Whether defendants provide a reasonable means to investigate claims of theft, fraud and cybersecurity;

(C) Whether Plaintiff and the Class are entitled to refunds of fees and costs and of money lost or stolen after notice to the defendants of potential theft;

41. Typicality. Plaintiff's claims are typical of the claims of the Class members in that Plaintiffs and each member of the Class all suffer similar losses, namely, theft of a Money Network Card, information and benefits thereon and they have suffered and will continue to suffer financial hardship and

other damages as a result of Defendants' conduct.

42. Adequacy of Representation. Plaintiff will fairly and adequately protect the interests of the Class members. Plaintiff has retained counsel experienced in complex class actions and in complex litigation and Plaintiff intends to prosecute this action vigorously. Plaintiff has no adverse or antagonistic interests to those of the Class.

43. Superiority. A class action is superior to all other available means for the fair and efficient adjudication of this controversy. Furthermore, even if Class members could afford such individualized litigation, the court system could not sustain it. Individualized claims brought by members of the Class would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, comprehensive supervision by a single court and no unusual management difficulties under the circumstances here.

**CLAIMS AGAINST ALL DEFENDANTS JOINTLY AND SEVERALLY**

**FIRST CAUSE OF ACTION – DECLARATORY RELIEF UNDER ERISA**

44.    Plaintiff restates and re-allege the above paragraphs as if fully set forth in this cause of action.

45.    Plaintiffs, for themselves and on behalf of all Class members, seek a declaration pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), and 28 U.S.C. §§ 2201 and 2202, of their rights under federal law. Specifically, Plaintiff, for themselves and on behalf of all Class members, seek a declaration:

(A)    That they are "employees";

(B)    That Defendant Walmart's Plan is a "plan" under ERISA subject to, among other things, ERISA's fiduciary duty requirements;

(C)    That Plaintiffs and Class members are entitled to a reasonably secure method of receiving their compensation and disability benefits and an ERISA compliant procedure for seeking reimbursement of funds lost to avoidable theft, fraud and cybersecurity risks.

(D)    That certain Plan provisions violate ERISA; and

(E)    That Plaintiffs and the Class are entitled to reformation of the contracts and restitution of benefits lost due to avoidable theft, fraud and cybersecurity risks in order to comply with ERISA's requirements.

**SECOND CAUSE OF ACTION - INJUNCTIVE RELIEF**

46.     Plaintiffs restate and re-allege the above paragraphs as if fully set forth in this cause of action.

47.     Defendants have been refusing to provide participants with an ERISA compliant procedure for claiming refunds of compensation and disability benefits lost due to theft, cybersecurity breaches and fraud on unsecure Cards.

48.     That practice continues today and has damaged, and is currently damaging Plaintiff and Class members.

49.     Plaintiff and Class members, therefore, request that this Court issue an injunction prohibiting Defendants from continuing to issue and administer benefit funds relating to cards without appropriate theft protection and cybersecurity protections; prohibiting Defendants from continuing to deny participants a process for requesting refunds of employee benefits lost due to the absence of reasonable theft, fraud and cybersecurity protections; prohibiting Defendants from implementing benefits plans which do not comply with ERISA; and ordering Walmart, Sedgwick and Money Network to comply with ERISA requirements governing the Plan.

### THIRD CAUSE OF ACTION

### CLAIM FOR BENEFITS UNDER ERISA § 502(a)(1)(B)

### DISABILITY & COMPENSATION  BENEFITS PLAN

50.     Plaintiff restate and re-allege the foregoing

paragraphs as if fully set forth in this cause of action.

51.    ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), authorizes a participant or beneficiary of a plan to bring a civil action to recover benefits due under the terms of the plan, to enforce his rights under the terms of the plan, and to clarify his rights to future benefits under the plan.

52.    ERISA defines an "employee disability/compensation benefit plan" and "disability/compensation plan" as "any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that by its express terms or as a result of surrounding circumstances such plan, fund, or program (i) provides disability income to employees, or (ii) results in a deferral of income by employees for periods extending to the Disability & Compensation  of covered employment or beyond." 29 U.S.C. §1002(2)(A).

53.    The Plan that Walmart offered to all employees meets the definition of an "employee disability/compensation benefit plan" under ERISA.

54. Walmart, Sedgwick and Money Network's refusal to recognize and correct problems related to theft, fraud and cybersecurity risks associated with the use of the Card was unlawful.

55. Walmart, Sedgwick and Money Network's refusal to provide a reasonable, ERISA compliant procedure for participants to seek reimbursement of avoidable theft losses and cybersecurity breaches was also a violation of ERISA.

56. Walmart, Sedgwick and Money Network's ERISA violations have damaged Plaintiff and the Class, including but not limited to benefits due and owing had the Disability & Compensation Benefits Plan complied with ERISA.

57. Walmart, Sedgwick and Money Network's conduct is the cause of injury and damage to Plaintiff and Class members in an amount to be proven at trial.

## FOURTH CAUSE OF ACTION

## CLAIM FOR OTHER APPROPRIATE RELIEF UNDER ERISA § 502(a)(3)

## DISABILITY & COMPENSATION  BENEFITS PLAN

58. Plaintiffs restate and re-allege the foregoing paragraphs as if fully set forth in this cause of action.

59. Walmart, Sedgwick and Money Network are fiduciaries as such term is defined by ERISA. 29 U.S.C. § 1002(21).

60. ERISA requires that a fiduciary "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and – with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with

such matters would use…" 29 U.S.C. § 1104(a)(1)(B).

61. Walmart, Sedgwick and Money Network's refusal to implement reasonable measures to avoid theft, fraud and cybersecurity breaches, to charge administrative costs associated with the same and to fail to provide a reasonable, ERISA compliant mechanism for claiming refunds of money lost due to theft, fraud and cybersecurity related to use of said card were unlawful and a breach of their fiduciary duties.

62. Walmart, Sedgwick and Money Network's refusal to maintain a reasonable, ERISA compliant mechanism for participants to seek reimbursement for losses of compensation and disability pay due to theft, fraud and cybersecurity breaches related to use of the Card was also a violation of ERISA and a breach of their fiduciary duties.

63. The Plaintiffs and Class members are entitled to equitable relief under ERISA § 502(a)(3), including retroactively reforming the Plan to comply with ERISA's fiduciary obligations with respect to securely transferring compensation and disability funds to Employees and implementing policies and procedures to reimburse Employees for losses associated with the same in order to be made whole and to prevent Defendants' unjust enrichment.

64. The defendants' conduct has caused actual harm to

Plaintiffs and Class members in an amount to be proven at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff individually, and on behalf of all other similarly situated, demand judgment against the Defendants, jointly and severally, and relief from this Court as follows:

A. An order certifying the Class as described with the named Plaintiff as Class Representative(s) and appointing undersigned counsel as Lead Counsel for the Class;

B. A declaration that Plaintiff and Class Members are legal "employees," for all purposes, including, but not limited to, ERISA;

C. A declaration that the Plan is an employee benefit plan subject to ERISA;

D. A declaration that the Plan fails to comply with ERISA's provisions by failing to impose reasonable protections to Card users for their losses due to against fraud, theft and cybersecurity breaches and by failing to provide an ERISA compliant procedure to make claims regarding losses relating to the same;

E. Refunds to Plaintiff and the Class of card fees and costs and all other costs passed on to participant and which were purportedly charged to administer the card in a reasonably

secure and convenient manner;

 F. An injunction barring Defendants from continuing to issue and use a card to deliver compensation and disability benefits in a manner that is unreasonably prone to theft, cybersecurity and theft;

 G. An award of attorneys' fees, plus the costs and expenses of this action;

 H. All such other legal and equitable relief to which Plaintiff and Class are entitled.

        Respectfully submitted,

        <u>s/Lee Wendell Loder</u>
        Lee W. Loder, Esq.
        Attorney for Plaintiff

**LODER, P.C.**
PO Box 13545
Birmingham, AL 35202
Telephone: (205) 326-0566
Facsimile: (856)997-1401
Email: lloder@loderpc.com